UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                            No. 20-CR-01903 MV

JOSE PENA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Jose Pena's Response to the United States' Opposed Motion for a *Lafler/Frye* Hearing. Doc. 43. The United States requested a hearing on May 18, 2021. Doc. 31. Seeing no response, the Court granted the United States' motion and requested that a United States Magistrate Judge conduct a *Lafler/Frye* Hearing. Doc. 40. On the same day, Mr. Pena filed a Response. Doc. 43. Having carefully considered the response, relevant law, and being otherwise fully informed, the Court reconsiders its previous order [Doc. 40] and finds that the United States' motion is not well-taken and will be **DENIED.** The *Lafler/Frye* Hearing will be vacated.[1]

## BACKGROUND

On May 11, 2021, the United States extended a written plea offer to Mr. Pena via email to Mr. Pena's counsel. Doc. 31 ¶ 2. The proposed plea offer was set to expire on June 11, 2021. *Id.* On May 18, 2021, Mr. Pena's counsel informed the United States that, after reviewing the proposed plea agreement with counsel, Mr. Pena had rejected the plea offer. *Id.* The same day,

---

[1] Although the Court finds that Mr. Pena's Response is meritorious, it admonishes him to comply henceforth with the Local Rules of Criminal Procedure, which provide that a response must be served within fourteen (14) days after service of a motion. D.N.M.LR-Cr. 47.8.

the United States requested a hearing on whether defense counsel informed Mr. Pena of the United States' plea offer, whether they discussed the terms of the offer, and whether Mr. Pena then chose to reject the offer. *Id.* ¶¶ 3–4. The stated purpose of the requested *Lafler/Frye* hearing was "[t]o protect against any future claim of ineffective assistance of counsel on this issue." *Id.*

Mr. Pena asks the Court to deny the United States' motion for three reasons. First, although Mr. Pena's counsel considers the duty to communicate all plea offers "fundamental," Mr. Pena opposes a *Lafler/Frye* hearing because its purpose is to prevent Mr. Pena from succeeding on a future ineffective assistance of counsel claim. *Id.* ¶¶ 2–3. Additionally, Mr. Pena argues that *Lafler/Frye* hearings may run afoul of Rule 11(c)(1), which prevents the courts from participating in plea discussions. *Id.* ¶ 9 (citing Fed. R. Crim. P. 11(c)(1)). Finally, Mr. Pena argues that the grandeur and formality of a federal criminal hearing combined with questioning from the bench about a defendant's desire to proceed to trial risks influencing more risk-averse defendants to enter a guilty plea. *Id.* ¶¶ 5–13.

**STANDARD**

A criminal defendant has a constitutional right to effective assistance of counsel during plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 145 (2012); *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). The cases establishing this Sixth Amendment right, *Lafler* and *Frye*, involved post-conviction claims for ineffective assistance of counsel. In *Lafler*, the defendant established ineffective assistance because he relied on deficient advice to reject a plea offer and was later convicted at trial. *Lafler*, 566 U.S. at 174. In *Frye*, "defense counsel did not render the effective assistance the Constitution requires" when counsel allowed a plea offer "to expire without advising the defendant or allowing him to consider it." *Frye*, 566 U.S. at 145.

The *Lafler* and *Frye* majorities drew a dissent from Justice Scalia, who argued that by recognizing plea bargaining as a critical stage in which defendants have a right to effective assistance of counsel, the Court had "open[ed] a whole new field of constitutionalized criminal procedure: plea-bargaining law." *Lafler*, 566 U.S. at 175, 177 (Scalia, J., dissenting). The majority rejected the concern that their decision would "open the floodgates to litigation by defendants seeking to unsettle their convictions," writing that floods had not followed in the wake of similar decisions, nor had there been any indication "that defendants are receiving windfalls as a result of strategically timed [habeas] claims." *Id.* at 172. The Court also suggested that "[t]he prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated [habeas] claims." *Frye*, 566 U.S. at 146. For example, "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Id.* Neither decision required that formal offers be made part of the pretrial record. *Id.*; *Lafler*, 566 U.S. at 172.

Lower courts thus developed *Lafler*/*Frye* hearings to address effective assistance of counsel and judicial efficiency concerns at the pretrial stage. In this District of New Mexico, the United States regularly requests such hearings to protect against future claims of ineffective assistance of counsel. *See, e.g.*, Doc. 31 ¶ 3.

Yet, for good reason, district courts are explicitly barred from participating in plea discussions. *See* Fed. R. Crim. P. 11(c)(1). ("An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions."). "Excluding the judge from the plea discussions . . . minimizes the risk that the defendant will be judicially coerced into pleading guilty." *United States v. Cano-Varela*, 497 F.3d

3

1122, 1132 (10th Cir. 2007); *see also United States v. Begay*, 497 F. Supp. 3d 1025, 1084 (D.N.M. 2020) (citations and quotations omitted) ("This rule is in place because such discussion inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty."). Thus, the inquiry that a court may conduct in a *Lafler/Frye* hearing is extremely limited. *See Begay*, 497 F. Supp. 3d at 1084–85 (limiting the *Lafler/Frye* hearing to a "simple yes-or-no inquiry" to determine whether the plea offer was communicated); *United States v. Morgan*, 294 F. Supp. 3d 1218, 1226 (D.N.M. 2018) (extending the inquiry to include the terms of the plea offer, but acknowledging that only a "limited degree of inquiry" is proper under *Frye*) (citing *United States v. Pirk*, 236 F. Supp. 3d 796, 801 (W.D.N.Y. 2017); *United States v. Slane*, No. 11-81, 2015 WL 728481, at *20 n.14 (W.D. Pa. Feb. 19, 2015)).

The Tenth Circuit has never ruled on whether district courts have the authority or obligation to hold pretrial *Lafler/Frye* hearings. Two District of New Mexico cases have found that district courts have the authority to "hold a hearing to ascertain whether [defense] counsel communicated the United States' plea offer." *Begay*, 497 F. Supp. 3d at 1085; *Morgan*, 294 F. Supp. 3d at 1222. Outside this District, in *United States v. Broombaugh*, the court declined to hold a standalone *Lafler/Frye* hearing because (1) defense counsel represented to the court that she recognized and had discharged her duty under *Frye*, (2) such a colloquy "could set the stage for an unintended violation of Fed. R. Crim. P 11(c)(1)," and (3) "nothing in *Frye* suggests that the Court should mandate a colloquy every time a defendant declines the Government's plea offer." *United States v. Broombaugh*, No. 14-40005-10-DDC, 2014 WL 3107963, at *3–*4 (D. Kan. July 8, 2014) *amended in part sub nom. United States v. Reulet*, No. 14-40005-10-DDC, 2016 WL 126355, at *11 (D. Kan. Jan 11, 2016). The court later set a *Lafler/Frye* hearing immediately before the start of trial. *Reulet*, 2016 WL 126355, at *11; *see also United States v. Mayer*, No. 19-CR-0096

(WMW/HB), 2020 WL 1444964, at *6 (D. Minn. Mar. 25, 2020) (reasoning that, where there was an existing record of the plea offer and its rejection, the United States had not demonstrated the utility of a *Lafler*/*Frye* hearing).

## DISCUSSION

### 1. Effective Assistance of Counsel Following *Lafler* and *Frye*

Given "that plea bargains have become so central to the administration of the criminal justice system . . . it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Frye*, 566 U.S. at 143–44.  As such, "the Court is obligate[d] to ensure that [a defendant] receives effective assistance of counsel" during plea negotiations.  *Begay*, 497 F. Supp. 3d at 1085 (citing *Garcia v. Teitler*, 443 F.3d 202, 209 (2d Cir. 2006)).

But what exactly *is* effective assistance of counsel at the plea-bargaining stage?  The Supreme Court declined to define defense counsel's precise duties during the plea-bargaining process in *Lafler* and *Frye*.  *Frye*, 566 U.S. at 145.  However, in *Lafler*, the Court made clear that a defendant could succeed on an ineffective assistance claim when he received constitutionally inadequate advice from defense counsel.  *Lafler*, 566 U.S. at 160–61, 174 (finding counsel ineffective when he advised his client to reject a favorable plea offer based on a misunderstanding of the applicable law).  Elsewhere, the Supreme Court has strongly implied that constitutionally inadequate advice may occur where defense counsel's "failure to investigate or discover potentially exculpatory evidence . . . 'prejudiced' the defendant by causing him to plead guilty rather than go to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In this District, at least one court has found that it was unreasonable for counsel to give advice "on the wisdom of going to trial or accepting a plea offer" before "completing a more thorough investigation." *Duran v. Janecka*, No.

CV 10-0884 MCA/WPL, 2014 WL 11456085, at *3 (D.N.M. Sept. 25, 2014), *aff'd*, 608 F. App'x 579, 580 (10th Cir. 2015) (citing Am. Bar Ass'n, *ABA Standards for Criminal Justice: Pleas of Guilty*, 14-3.2(b) (3d ed. 1999) ("Defense counsel should not recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed.")).

Mr. Pena argues that defense counsel cannot adequately investigate his case prior to giving advice on whether to plead, because the prosecutor's obligation to disclose *Brady* evidence does not apply during the plea-bargaining process. Doc. 43 ¶ 12 (citing *United States v. Ruiz*, 536 U.S. 622 (2002)). Yet in *Lafler* and *Frye*'s recognition of plea bargaining as a critical stage in the criminal justice system, it follows that "both defense counsel and prosecutors must conduct bargaining within minimum constitutional parameters." Russell D. Covery, *Plea-Bargaining Law after Lafler and Frye*, 51 Duq. L. Rev. 595, 609 (2013). Indeed, as Justice Scalia points out in *Lafler*, "it would be foolish to think that 'constitutional' rules governing *counsel's* behavior will not be followed by rules governing the *prosecution's* behavior in the plea-bargaining process." *Lafler*, 566 U.S. at 176 (Scalia, J., dissenting) (emphasis in original). "Accordingly, it seems plain after *Lafler* and *Frye* that competent advice in plea-bargaining not only requires knowledge of the nature of the charges lodged and the consequences of conviction, but also reasonable awareness of the evidence upon which the state would rely were the case to proceed to trial." Covery, *Plea-Bargaining Law*, *supra*, at 611. This Court agrees: in practice, it is impossible to provide meaningful advice on whether or not to accept a plea offer if one does not have full discovery. In a world where "plea bargaining is . . . not some adjunct to the criminal justice system" but in fact "*is* the criminal justice system," a heightened burden on defense counsel should be matched by a heightened burden on the government to divulge exculpatory evidence prior to a change of plea hearing. *Frye*, 566 U.S. at 144. Though the government does not presently have a duty to turn

6

over exculpatory evidence during plea negotiations, the Court is troubled by the critically important, last-minute disclosures it has witnessed prior to trial. In some cases, these disclosures would have undoubtedly affected a defendant's choice to plead, had they been made prior to or during plea discussions.

The Court also shares Mr. Pena's concern that holding *Lafler/Frye* hearings does little to address this systemic infirmity. As discussed *supra*, the Court is extremely limited in its ability to meaningfully inquire into the adequacy of defense counsel's representation. *See Begay*, 497 F. Supp. 3d at 1084–85; *Morgan*, 294 F. Supp. 3d at 1226. The standard *Lafler/Frye* hearing and the concomitant yes-or-no answers do nothing to apprise the Court of defense counsel's efforts to investigate or discover potentially exculpatory evidence, analyze discovery, or research the law in order to provide an adequate recommendation as to a plea offer. The Court cannot in good conscience rubberstamp a proceeding designed to foreclose a defendant's potential habeas relief when that same proceeding does so little to ensure that a defendant is, in fact, receiving effective assistance.

**2. The Court's Obligations Following *Lafler* and *Frye***

Regardless of how *Lafler* and *Frye* implicate *Brady*, the matter squarely before the Court is the extent of its obligations following *Lafler* and *Frye*. Courts have clear authority to conduct *Lafler*/*Frye* hearings, although the precise timing and scope of questioning in these hearings remain in dispute. *See Begay*, 497 F. Supp. 3d at 1085; *Morgan*, 294 F. Supp. 3d at 1222; *Broombaugh*, 2014 WL 3107963, at *3–*4. Indeed, this Court has ordered *Lafler*/*Frye* hearings in the past. *See, e.g.*, *United States v. Phillips*, No. 19-CR-4440-MV, 2020 WL 3964980, at *1 (D.N.M. July 13, 2020). Yet the law is equally clear that courts are under no obligation to hold *Lafler*/*Frye* hearings. *See, e.g.*, *Lafler*, 566 U.S. at 172 ("trial courts *may* adopt some measures")

(emphasis added); *Frye*, 566 U.S. at 146 ("formal offers *can* be made part of the record") (emphasis added); *Broombaugh*, 2014 WL 3107963, at *4 ("[N]othing in *Frye* suggests that the Court should mandate a colloquy every time a defendant declines the Government's plea offer.").

In considering its obligations following *Lafler* and *Frye*, the Court must consider judicial efficiency. The Court "has an interest in not devoting limited judicial resources to handling post-conviction petitions when a fully-developed pretrial record potentially would alleviate the need for a later evidentiary hearing." *Morgan*, 294 F. Supp. 3d at 1222. On the other hand, *Lafler*/*Frye* hearings, particularly standalone hearings, take time to schedule and hold that could otherwise be devoted to the backlog of trials that has built up during the COVID-19 pandemic. Although the Court has an interest in discouraging contrived ineffective assistance claims, there is no indication that this concern is sufficient to justify a standalone *Lafler*/*Frye* hearing. *See Lafler*, 566 U.S. at 1390 (citations omitted) ("Petitioner argues that implementing a remedy here will open the floodgates to litigation . . . . Petitioner's concern is misplaced.")

In ruling on whether to grant a *Lafler*/*Frye* hearing, the Court must also consider the potential risk of pressuring more risk-averse defendants to plead guilty. Mr. Pena argues that such a hearing inverts the procedural safeguards of a guilty plea colloquy, requiring a defendant to pause and consider not what rights they may be relinquishing, but whether asserting their constitutional right to proceed to trial is worthwhile. Doc. 33 ¶¶ 10–11. This argument is well-founded. Federal Rule of Criminal Procedure 11(c)(1) exists precisely "because such discussion inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty." *Begay*, 497 F. Supp. 3d at 1084; *see also Cano-Varela*, 497 F.3d at 1132.

Finally, the Court must consider its duty to ensure that defendants receive effective assistance of counsel at the plea-bargaining stage of litigation. Neither *Lafler* nor *Frye* imposed

any new affirmative obligation on district courts. *See Lafler*, 566 U.S. at 176 (Scalia, J., dissenting) (pointing only to obligations on defense counsel and prosecutors). Nevertheless, as discussed *supra*, the Court has a general duty to ensure that defendants receive effective assistance of counsel. *Begay*, 497 F. Supp. 3d at 1085. Here, the United States has represented that Mr. Pena's counsel communicated and discussed the terms of the plea offer with Mr. Pena, and Mr. Pena's counsel has affirmed that he understands that the duty to communicate a plea offer is "fundamental." Doc. 31 ¶ 2; Doc. 33 ¶ 2. Because the United States "has suggested no reason to distrust counsel's representations and the Court declines to invent one," the Court declines to opine further on what, if any, procedural safeguards are necessary at this stage of litigation to ensure that Mr. Pena has received effective assistance of counsel. *Broombaugh*, 2014 WL 3107963, at *3; *see also Mayer*, 2020 WL 1444964, at *6. A *Lafler/Frye* hearing thus is unnecessary based on the facts currently before the Court.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the United States' Motion for a *Lafler/Frye* Hearing is **DENIED** and the *Lafler/Frye* Hearing shall be vacated.

ENTERED this 30th day of September 2021.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE