## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                  No. 20-CR-01903 MV

JOSE PENA,

      Defendant.


## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on four of the government's five motions *in limine*, including the United States' First Motion *in Limine* to Exclude Any Reference to Penalties or Sentencing Before the Jury ["Penalties MIL"] [Doc. 56], the United States' Second Motion *in Limine* to Prohibit Discussion of Plea Negotiations in Front of the Jury ["Plea Negotiations MIL"] [Doc. 57], the United States' Third Motion *in Limine* to Admit Victim's Prior Statements Made to SANE Examiner ["Prior Statements MIL"] [Doc. 58], and the United States' Fifth Motion *in Limine* to Admit Trade Inscription Evidence ["Trade Inscription MIL"] [Doc. 60]. Mr. Pena filed a response to the government's motions *in limine* [Doc. 68], and the government filed a reply [Doc. 76]. Having carefully considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the Penalties MIL is **GRANTED**, the Plea Negotiations MIL is **GRANTED**, the Prior Statements MIL is **GRANTED IN PART**, and the Trade Inscription MIL is **GRANTED**.

## BACKGROUND

Mr. Pena was charged by indictment on October 16, 2020 on eight counts of Production of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256. Doc. 1. On June 9, 2021, a Superseding Indictment was filed,

charging Mr. Pena with one count of Coercion and Enticement, in violation of 18 U.S.C. § 2422(b), as well as eight counts of Production of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256.  Doc. 32.

## DISCUSSION

### 1.  Penalties MIL

In the Penalties MIL, the government moves the Court "for an order preventing Defendant from presenting to the jury any and all direct or indirect reference to, or evidence of, the sentence that might be imposed if Defendant is convicted."  Doc. 56 at 1.  Mr. Pena does not oppose the Penalties MIL.  Doc. 68 at 1.

It is well-established that unless the jury has a role in sentencing—which it does not in the instant case—the jury may not consider what sentence might be imposed in reaching its verdict. *See, e.g.*, *Shannon v. United* States, 512 U.S. 573, 579 (1994).  Providing sentencing information is "irrelevant to the jury's task."  *Id.*  Moreover, it invites jurors "to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  *Id.*; *see also United States v. Parrish*, 925 F.2d 1293, 1299 (10th Cir. 1991).  Accordingly, the Court will grant the Penalties MIL.

### 2.  Plea Negotiations MIL

In the Plea Negotiations MIL, the government moves the Court for an order prohibiting Mr. Pena, "his counsel, and any defense witnesses from asking any question, introducing any evidence, or making any statement, directly or indirectly, regarding plea negotiations in the presence of the jury."  Doc. 57 at 1.  Mr. Pena does not oppose the Plea Negotiations MIL.  Doc. 68 at 1.

Whether the government extended a plea offer to Mr. Pena is irrelevant to the issues the

jury will be called upon to decide.  As such, any statement regarding plea negotiations is properly

excluded under Rule 403 due to the danger that it would confuse the jury.  *See* Fed. R. Evid. 401,

402, 403, 410.  Accordingly, the Court will grant the Plea Negotiations MIL.

### 3. Prior Statements MIL

#### a. Parties' Arguments

In the Prior Statements MIL, the government moves the Court for an order "admitting Jane

Doe's statement made to the Sexual Assault Nurse Examiner ('SANE') nurse who examined her."

Doc. 58 at 1.  Specifically, the government seeks the admission of the following statement provided

by Jane Doe to the SANE examiner, Alejandra Casarrubias:

> The cartel, they had us scared [and] (sic) had everything saying they were cutting
> the head to my dad and they were going to rape and kill my brother and this family
> members (sic) had to do something to protect us and they had to have sex with me.
> I told them no, I could not do it. After that, they said they had to take video and all
> that stuff. I told them I did not want them to take a video. That's when they hit my
> dad and they said if I do not do this, they won't give me back my dad. Later, I was
> in the house to see what I needed to do, later they send me a message. If you want
> to have courage drink tequila or a beer. I was crying I drank "pisto" but I could not
> finish it. My family member came, I had my eyes covered, then they started and I
> said I did not want to [do] (sic) it and that I was scared, they kept like touching me.
> I said to stop touching me already and I told them to stop. They told me to stop
> crying and to have two videos down. I was crying, they told me to stop crying and
> fake to enjoy it. I said how you expect me to be? I was gross[ed] (sic) out. They
> told me what positions, no[t] to use protection, what to do, everything they told me
> how to do it. They said every week they want more videos. I am scared, I believe
> this is probably a joke, maybe not the real mafia, but when they got my dad, I said
> "this is true," I am scared for my brother and me. We believe that something was
> going to happen, that I was going to die. After they told me to touch, he went down
> ([patient]) pointed to genital area). I was crying, they told me to stop and to enjoy
> it. They get up and start it. It hurt, it hurt very badly, I was screaming and it hurt.
> Then was my turn to be on top and I said I do not know what to do, I do not know
> anything, and they told me to face like this and I did not know what to do. Then,
> they were like they had to see that I finish, I was thinking why, is not this enough?
> I felt sleep, or I blacked out. They woke me up but I believe like I forgot or I was
> [a]sleep (sic). I could not open my eyes, I felt pain like I still feel pain and it felt so
> disgusted. I told my parents and detective I do not know if I want to be alive
> anymore. I hate this… This has been supposedly for mafia, why, I cannot even think
> right… I do not know what to do. Everything sucks. I was so afraid that we made

our last meal together as a family of how scared we are. The mafia is so big, I am really scared, I do not understand why this happened to us. They do not care about anyone, they said they do not care about any fucking life. I was so scared, so disgusted it just thinking about it.

Doc. 58 at 1–2.

First, the government argues that Jane Doe's statements are relevant to the charged crimes of Coercion and Enticement and Production of Child Pornography. *Id.* at 2; Fed. R. Evid. 401, 402, 403. Specifically, the government argues that the statements have a strong tendency to prove that Jane Doe was coerced into engaging in sexual activity with Mr. Pena and that Mr. Pena filmed videos of the sexual activity. *Id.* at 2–3. Second, the government argues that Jane Doe's statements are *res gestae* or intrinsic evidence that is "inextricably intertwined with the charged offense." *Id.* at 3. The government argues that these statements "provide[] context that will be critical in explaining [Mr. Pena's] scheme and why the sexual acts occurred," and that without these statements, the jury will not receive "a full presentation of the facts in this case." *Id.* Finally, the government argues that those portions of Jane Doe's statements that are hearsay are nevertheless admissible under Federal Rules of Evidence 803(2)–(4). *Id.* at 4. Under Rule 803(2), the government argues that Jane Doe's statements were excited utterances because she made the statements "while still experiencing severe physical and emotional distress caused by the sexual assault she experienced just hours earlier." *Id.* Under Rule 803(3), the government argues that Jane Doe's statements were statements "of the declarant's then-existing state of mind." *Id.* Under Rule 803(4), the government argues that Jane Doe's statements were made for medical diagnosis or treatment because she provided information about her physical condition so the SANE examiner could properly examine her and provide medical care. *Id.*

Mr. Pena responds, arguing that Jane Doe's statements violate the rules of hearsay and that the statements constitute testimonial evidence in violation of Mr. Pena's Sixth Amendment

confrontation rights.  Doc. 68 at 1.  First, Mr. Pena argues that Jane Doe's statement are, in fact, offered for the truth of the matter asserted, and should therefore be excluded under Federal Rule of Evidence 802.  *Id.* at 2–3.  Second, Mr. Pena argues that the statements do not constitute *res gestae* evidence because the government seeks to introduce the contents of the statement rather than to prove that the statements were, in fact, made.  *Id.* at 3.  Next, Mr. Pena argues that Jane Doe's statements are not admissible under Federal Rules of Evidence 803(2)–(4).  *Id.* at 4.  Under Rule 803(2), Mr. Pena argues that Jane Doe's statements were not excited utterances because they were not made spontaneously or contemporaneously with the stress of the event, but "were elicited after a period of reflection, and in response to extensive and repeated questioning."  *Id.* at 5. Further, Mr. Pena argues that the statements do not deal with the alleged criminal contact, but rather the supposed cartel threat against her family, and thus there is not a clear nexus between the content of the statement and the event.  *Id.* at 6.  Under Rule 803(3), Mr. Pena argues that Jane Doe's statements were not statements of her then-existing state of mind *during* the alleged incident in question.  *Id.*  Thus, the only statements admissible under Rule 803(3) would be ones like "I am scared" and "I cannot even think right."  *Id.*  Finally, under Rule 803(4), Mr. Pena argues that Jane Doe's statements were not made because she was motivated to seek medical treatment, but because "[s]he and her mother were told to go to the SANE examiner by the investigating detective, and Jane Doe gave no indication that she believed it was for any purpose other than the ongoing criminal investigation."  *Id.* at 7–8.  Mr. Pena also argues that if the Court is nevertheless convinced that some portion of Jane Doe's statement comes in under Rule 803(4), then the statement should be redacted as follows:

> I was crying I drank "pisto" but I could not finish it. My family member came, I had my eyes covered . . . then they started and I said I did not want to it and that I was scared, they kept like touching me. I said to stop touching me already and I told them to stop. They told me to stop crying. . . They told me what positions, no

to use protection, what to do, everything they told me how to do it. . . I am scared. . . After they told me to touch, he went down. I was crying, they told me to stop and enjoy it. They get up and start it. It hurt very badly, I was screaming and it hurt. Then was my turn to be on top and I said I do not know what to do, I do not know anything, and they told me to face like this. . . Then, they were like they had to see that I finish. . . I felt sleep, or I blacked out. They woke me up but I believe like I forgot or I was sleep. I could not open my eyes, I felt pain like I still feel pain. . . I told my parents and detective I do not know if I want to be alive anymore. . . I cannot even think right.

*Id.* at 8.  However, during the April 7, 2022 pretrial conference, Mr. Pena asserted that statements such as "I was crying" were not admissible under Rule 803(4).  *See* Doc. 96.

Mr. Pena also argues that Jane Doe's statements violate his right to confront adverse witnesses in violation of the Sixth Amendment.  *Id.* at 8–16.  The government, however, asserts that "Jane Doe will testify at trial and be subject to cross examination."  Doc. 76 at 4.

### b.  Court's Ruling

#### i.  Confrontation Clause

Because the government has committed that Jane Doe will testify at trial, the government has "remov[ed] Doe's testimony from *Crawford v. Washington*'s domain."  *See United States v. Chaco*, 801 F. Supp. 2d 1200, 1214 (D.N.M. 2011).  The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  As the Supreme Court decided in *Crawford v. Washington*, the Confrontation Clause extends to testimonial, out-of-court statements.  541 U.S. 36, 38 (2004).  However, *Crawford* only forbids "the admission of testimonial statements of a witness *who did not appear at trial* unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  *Id.* at 53–54.  In other words, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."  *Id.* at 59 n.9.  "The Clause

does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* Accordingly, the Court finds that "the Confrontation Clause does not prohibit the [government] from introducing [Jane Doe's] statements." *Id.*

### ii.  *Res Gestae*

The Court will not admit Jane Doe's statements as *res gestae* or intrinsic evidence. "Evidence of other crimes should not be suppressed when those facts come in as *res gestae*—'as part and parcel of the proof of the offense [] charged in the indictment.'" *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995). The Tenth Circuit has approved using *res gestae* evidence "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae." *Id.* (quotations omitted).

Jane Doe's statements are not "part and parcel" of the offense, but a recounting of the offense. *Kimball*, 73 F.3d at 272. Nor is *res gestae* evidence included as an exception to the rule against hearsay. *See* Fed. R. Evid. 803. Thus, while Mr. Pena's alleged invention of the cartel threats, for example, may be admissible as *res gestae* because it makes "the charged offenses understandable 'by describing the context in which they arose,'" Jane Doe's hearsay statements recounting the charged offenses and the context in which they arose is not *res gestae*. *United States v. Shirley*, 214 F. Supp. 3d 1124, 1150 (D.N.M. 2016). Moreover, Jane Doe's hearsay statements are not "necessary to a full presentation of the case," given that Jane Doe will be available to testify on these topics at trial. *Kimball*, 73 F.3d at 272. Accordingly, the Court will not admit Jane Doe's statements on this basis.

### iii.  Non-Hearsay

Many of Jane Doe's statements regarding the cartel or mafia are admissible, as they are not

barred by the rule against hearsay.  *See* Fed. R. Evid. 802.  Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801.  Because the government does not admit Jane Doe's statements regarding the cartel or mafia's purported actions or threats to prove that there was, in fact, a threat against her or her family, the statements do not meet the definition of hearsay.  *See* Fed. R. Evid. 801.  Thus her statements as to the cartel or mafia's purported actions and threats are admissible.

However, Jane Doe's statements regarding her reactions to the cartel or mafia's purported actions and threats must be excluded by the rule against hearsay.  *See* Fed. R. Evid. 802.  For example, her statement "they had us scared" is inadmissible hearsay because—regardless of whether the cartel or mafia existed—this statement is offered to prove Jane Doe's response to the purported threats.  Fed. R. Evid. 801; Doc. 58 at 1–2.

At the end of this section, the Court will present a detailed analysis of Jane Doe's statements, as well as a redacted version of her statement that is consistent with the Court's rulings under Rules 801 and 803(4).

### iv.  Excited Utterances

The Court will defer its ruling on whether Jane Doe's statement was an excited utterance. Under Rule 803(2), a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is admissible.  Fed. R. Evid. 803(2).  For a statement to qualify as an excited utterance, "the proponent must establish (1) a startling event, (2) the declarant made the statement under the stress of the event's excitement, and (3) a nexus exists between the content of the statement and the event."  *United States v. Magnan*, 863 F.3d 1284, 1292 (10th Cir. 2017).

While the Court finds that the first and third prongs are met, the government must establish

that Jane Doe was still "under the stress of the event's excitement" at the time she made her statement in order to establish a predicate foundation for admissibility.  *See id.*  To determine whether the second prong is met, courts may consider a range of factors, including (a) "the amount of time between the event and the statement," (b) "the nature of the event," (c) "the subject matter of the statement," (d) "the age and condition of the declarant," (e) "the presence or absence of self-interest," and (f) "whether the statement was volunteered or in response to questioning."  *United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009).  The Tenth Circuit notes:

> A useful rule of thumb is that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. Testimony that the declarant still appeared "nervous" or "distraught" and there was a reasonable basis for continuing emotional upset will often suffice.

*Magnan*, 863 F.3d at 1292.

Should the government be able to establish that these factors weigh in favor of a finding that Jane Doe was still "under the stress of the event's excitement" at the time she made her statement, the Court will find that the entire statement is admissible under Rule 803(2).

### v.  Then-Existing State of Mind

The Court will defer its ruling on whether any part of Jane Doe's statement qualifies as a statement of her then-existing state of mind.  Under Rule 803(3), a "statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition (such as a mental feeling, pain, or bodily health)" is admissible.  Fed. R. Evid. 803(3).  However, this hearsay exception does not include "a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."  *Id.*

While certain phrases like "I hate this" or "I am scared" appear to be admissible under Rule

803(3), the Court cannot make any ruling under Rule 803(3) until the government establishes a predicate foundation for admissibility.  In particular, the Court is hampered by the grammatically inconsistent nature of Jane Doe's statement.  Namely, it does not always appear that verb tense corresponds to whether an action or emotion in fact occurred in the past or present.  Thus, the Court cannot accurately determine whether certain statements reflect Jane Doe's then-existing state of mind—or a previous state of mind.

Should the government be able to establish that portions of Jane Doe's statement reflect her then-existing state of mind, the Court will admit them under Rule 803(3).

### vi.  Medical Diagnosis or Treatment

Finally, the Court finds that many of Jane Doe's statements are reasonably pertinent to a medical diagnosis or treatment and are therefore admissible on this basis.  Under Rule 803(4), a statement that "is made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause" is admissible.  Fed. R. Evid. 803(4).  The test for admissibility under Rule 803(4) is "whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment." *United States v. Tome*, 61 F.3d 1446, 1451 (10th Cir. 1995).  However, "the declarant need not have necessarily made the statement to a physician."  *Id.*  For example, "statements to hospital attendants, ambulance drivers, or even members of the family might be included."  *Id.* (citing Fed. R. Evid. 803(4) advisory committee's note).  Statements to SANE examiners are also admissible under Rule 803(4).  *See United States v. Chaco*, 801 F. Supp. 2d 1200, 1213 (D.N.M. 2011).  However, this does not mean that every medical provider is automatically covered by Rule 803(4).  For example, in *Tome*, the Tenth Circuit found that statements made to a Child Protection Services caseworker were not admissible under Rule 803(4) because the caseworker testified that she did

not diagnose or treat the alleged abuse victim but only interviewed the alleged victim "to the extent necessary to make a decision whether a protective order was appropriate." *Tome*, 61 F.3d at 1451.

As relevant to this case, the Tenth Circuit has recognized that "all victims of domestic sexual abuse suffer emotional and psychological injuries." *Id.* Thus, "the nature and scope of the abuse is [] pertinent to deciding what treatment and counseling may be necessary." *Chaco*, 801 F. Supp. 2d at 1213. Likewise, because "the exact nature and extent of [these injuries] depend on the identity of the abuser," such information is reasonably pertinent to whether "the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from [her home]." *Tome*, 61 F.3d at 1451. Accordingly, "a hearsay statement revealing the identity of a sexual abuser who is a member of the victim's family or household is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes reasonably pertinent to the victim's proper treatment." *Id.*

As a threshold matter, the Court finds that many of Jane Doe's statements to SANE nurse Alejandra Casarrubias are admissible under Rule 803(4) because Ms. Casarrubias provided Jane Doe medical treatment. Unlike in *Tome*, Ms. Casarrubias' interview extended beyond determining "whether a protective order was appropriate" to providing medical treatment. *Tome*, 61 F.3d at 1451. Specifically, Ms. Casarrubias' interview was relevant to her decision to (1) complete a physical examination of Jane Doe's genitalia; (2) collect swab samples from her chest and back; (3) complete a suicide assessment/screening tool; (4) prescribe Plan B, Rocephin, and Zithromax to prevent pregnancy, gonorrhea, and chlamydia, respectively; (5) prescribe Tylenol and Ibuprofen for pain; (6) refer Jane Doe to the emergency room for a full psychiatric evaluation due to her suicidal ideation; and (7) develop a safety plan to prevent future sexual abuse. *See* Docs. 94, 96.

Thus, the Court reviews Jane Doe's statements to Ms. Casarrubias to determine whether

they were "reasonably pertinent" to her medical diagnosis or treatment.  First, many of Jane Doe's statements describe the specific abuse that occurred, including "past or present symptoms or sensations" and "their inception," and are therefore reasonably pertinent to her treatment or diagnosis.  Fed. R. Evid. 803(4); *Tome*, 61 F.3d at 1451.  For example, Jane Doe identified how the abuse occurred ("then they started and . . . they kept like touching me"); she identified the types of abuse that occurred ("he went down ([patient]) pointed to genital area"); and she identified her physical symptoms or sensations ("I felt pain like I still feel pain").  Doc. 58 at 1–2.   Second, many of Jane Doe's statements relate to the nature and scope of the abuse, and are therefore reasonably pertinent to her treatment or diagnosis.  Fed. R. Evid. 803(4); *Tome*, 61 F.3d at 1451; *Chaco*, 801 F. Supp. 2d at 1213.  For example, Jane Doe identified that alcohol was involved, ("I drank 'pisto'"); she identified the emotional abuse that occurred during the encounter, ("I was crying, they told me to stop crying and fake to enjoy it"); she identified that her attempts to stop the encounter were rejected ("I said I did not want to [do] (sic) it[1] and that I was scared, they kept like touching me."); and she identified that there was a high risk of ongoing abuse ("They said every week they want more videos. I am scared . . . I am scared for my brother and me.").  Doc. 58 at 1–2.  These statements are highly relevant to determining the severity of the emotional and psychological injury she suffered and "to deciding what treatment and counseling may be necessary"—particularly here, where Jane Doe expressed suicidal ideation following the abuse.

---

[1] To the extent that statements like "I said I did not want to [do] (sic) it" constitute double hearsay, the Court finds that each part of the combined statements conform with the Rule 803(4) exception to hearsay.  *See* Fed. R. Evid 803(4), 805; Doc. 58 at 1–2.  Namely, each part of the statement is relevant to the nature and scope of the abuse because both Jane Doe's statement, and the fact that she made the statement are relevant to the non-consensual nature of the encounter and are therefore reasonably pertinent to her treatment or diagnosis.  Fed. R. Evid. 803(4); *Tome*, 61 F.3d at 1451; *Chaco*, 801 F. Supp. 2d at 1213.  To the extent that other statements include double hearsay, the Court has carefully considered whether "each part of the combined statements conforms with an exception to the rule" in ruling on their admissibility.  Fed. R. Evid. 805.

*Chaco*, 801 F. Supp. 2d at 1213; *Tome*, 61 F.3d at 1451; Doc. 94.  Finally, many of Jane Doe's

statements identify her abuser, which is reasonably pertinent to her treatment or diagnosis.  Fed.

R. Evid. 803(4); *Tome*, 61 F.3d at 1451.  For example, she identified her abuser as a family member

("My family member came"); and she described her feelings of disgust at the incestual nature of

the abuse ("I was . . . so disgusted it just thinking about it.").  Doc. 58 at 1–2.  Accordingly, these

statements are reasonably pertinent to Jane Doe's medical diagnosis or treatment and are therefore

admissible on this basis.

At the end of this section, the Court will present a detailed analysis of Jane Doe's

statements, as well as a redacted version of her statement that is consistent with the Court's rulings

under Rules 801 and 803(4).

### c.  Court's Analysis of Jane Doe's Statement

| Jane Doe's Statement | Court's Finding |
| --- | --- |
| The cartel, | Admissible non-hearsay, because not asserted to show the cartel actually made this threat. |
| ~~they had us scared [and] (sic)~~ | Inadmissible hearsay, asserted to show Jane Doe's reaction to cartel's purported threats. |
| had everything saying they were cutting the head to my dad and they were going to rape and kill my brother and this family members (sic) had to do something to protect us and they had to have sex with me. | Admissible non-hearsay, because not asserted to show the cartel actually made this threat. |
| ~~I told them no, I could not do it.~~ | Inadmissible hearsay, asserted to show Jane Doe's reaction to cartel's purported threats. |
| That's when they hit my dad and they said if I do not do this, they won't give me back my dad. | Admissible non-hearsay, because not asserted to show the cartel actually made this threat. |
| ~~Later, I was in the house to see what I needed to do,~~ | Inadmissible hearsay, asserted to show Jane Doe's reaction to cartel's purported threats. |
| later they send me a message. If you want to have courage drink tequila or a beer. | Admissible non-hearsay, because not asserted to show the cartel actually made this threat. |
| I was crying I drank "pisto" but I could not finish it. My family member came, | Hearsay admitted under Rule 803(4) because statement describes nature and scope of abuse. |
| ~~I had my eyes covered,~~ | Inadmissible hearsay that is not reasonably pertinent to treatment or diagnosis. |
| then they started and I said I did not want to | Hearsay admitted under Rule 803(4) because |

| | |
|---|---|
| [do] (sic) it and that I was scared, they kept like touching me. I said to stop touching me already and I told them to stop. They told me to stop crying and to have two videos down. I was crying, they told me to stop crying and fake to enjoy it. | statement describes (1) specific abuse that occurred, including past or present symptoms and their inception, and (2) nature and scope of abuse. |
| ~~I said how you expect me to be?~~ | Inadmissible hearsay that is not reasonably pertinent to treatment or diagnosis. |
| I was gross[ed] (sic) out. They told me what positions, no[t] to use protection, what to do, everything they told me how to do it. They said every week they want more videos. I am scared, | Hearsay admitted under Rule 803(4) because statement (1) identifies her abuser, and (2) describes nature and scope of abuse. |
| ~~I believe this is probably a joke, maybe not the real mafia, but when they got my dad, I said "this is true,"~~ | Inadmissible hearsay, asserted to show Jane Doe's reaction to cartel's purported threats. |
| I am scared for my brother and me. | Hearsay admitted under Rule 803(4) because statement describes nature and scope of abuse. |
| ~~We believe that something was going to happen, that I was going to die.~~ | Inadmissible hearsay, asserted to show Jane Doe's reaction to cartel's purported threats. |
| After they told me to touch, he went down ([patient]) pointed to genital area). I was crying, they told me to stop and to enjoy it. They get up and start it. It hurt, it hurt very badly, I was screaming and it hurt. | Hearsay admitted under Rule 803(4) because statement describes specific abuse that occurred, including past or present symptoms and their inception. |
| ~~Then was my turn to be on top and I said I do not know what to do, I do not know anything, and they told me to face like this and I did not know what to do. Then, they were like they had to see that I finish, I was thinking why, is not this enough? I felt sleep, or I blacked out. They woke me up but I believe like I forgot or I was [a]sleep (sic). I could not open my eyes,~~ | Inadmissible hearsay that is not reasonably pertinent to treatment or diagnosis. |
| I felt pain like I still feel pain and it felt so disgusted. I told my parents and detective I do not know if I want to be alive anymore. | Hearsay admitted under Rule 803(4) because statement describes (1) specific abuse that occurred, including past or present symptoms and their inception, and (2) nature and scope of abuse. |
| ~~I hate this… This has been supposedly for mafia, why, I cannot even think right… I do not know what to do. Everything sucks. I was so afraid that we made our last meal together as a family of how scared we are. The mafia is so big,~~ | Inadmissible hearsay, asserted to show Jane Doe's reaction to cartel's purported threats. |
| I am really scared, | Hearsay admitted under Rule 803(4) because |

14

| | statement describes nature and scope of abuse. |
| --- | --- |
| ~~I do not understand why this happened to us.~~ | Inadmissible hearsay, asserted to show Jane Doe's reaction to cartel's purported threats. |
| They do not care about anyone, they said they do not care about any fucking life. | Admissible non-hearsay, because not asserted to show the cartel actually made this threat. |
| I was so scared, so disgusted it just thinking about it. | Hearsay admitted under Rule 803(4) because statement (1) identifies her abuser, and (2) describes nature and scope of abuse |

Doc. 58 at 1–2 (as redacted by Court).

### d. Court's Redacted Version of Jane Doe's Statement

The Court will admit the following redacted version of Jane Doe's statement. *Italicized text* signifies those portions of Jane Doe's statement admitted as non-hearsay. **Bold text** signifies those portions of the statement admitted under Rule 803(4):

> *The cartel had everything saying they were cutting the head to my dad and they were going to rape and kill my brother and this family members (sic) had to do something to protect us and they had to have sex with me. After that, they said they had to take video and all that stuff. That's when they hit my dad*, later they send me a message. *If you want to have courage drink tequila or a beer.* **I was crying I drank "pisto" but I could not finish it. My family member came, then they started and I said I did not want to [do] (sic) it and that I was scared, they kept like touching me. I said to stop touching me already and I told them to stop. They told me to stop crying and to have two videos down. I was crying, they told me to stop crying and fake to enjoy it. I was gross[ed] (sic) out. They told me what positions, no[t] to use protection, what to do, everything they told me how to do it. They said every week they want more videos. I am scared, I am scared for my brother and me. After they told me to touch, he went down ([patient]) pointed to genital area). I was crying, they told me to stop and to enjoy it. They get up and start it. It hurt, it hurt very badly, I was screaming and it hurt. I felt pain like I still feel pain and it felt so disgusted. I told my parents and detective I do not know if I want to be alive anymore. I am really scared[.]** *They do not care about anyone, they said they do not care about any fucking life.* **I was so scared, so disgusted it just thinking about it.**

Doc. 58 at 1–2 (as redacted by Court).

### 4. Trade Inscription MIL

In the Trade Inscription MIL, the government moves the Court for a ruling that "the trade inscriptions on [two] Devices are self-authenticating, non-hearsay evidence of the Devices' origin,

and that no additional extrinsic evidence of authenticity is necessary for its admission into evidence." Doc. 60 at 2.  Specifically, the government seeks this ruling as it relates to the internal labels and/or stamps (*i.e.*, "trade inscriptions") on the following two electronic devices:

1. one (1) Apple iPod Touch 6G (A1574), manufactured in China; and
2. one (1) LG GSM cellular phone, model MS631 G Stylo, bearing serial number 5911054, manufactured in Vietnam or South Korea.

*Id.* at 1–2.  The government seeks to establish the interstate-nexus element of the charged offense by introducing these devices into evidence.  *Id.* at 2; *see also* 18 U.S.C. § 2251(a).  Thus, the government seeks the trade-inscription ruling to streamline the presentation of evidence at trial and to avoid the expense of calling out-of-state witnesses from these manufacturers.  *Id.*  Mr. Pena does not oppose the Trade Inscription MIL.  Doc. 68 at 17.

The possibility of fraud, forgery, and misattribution of certain items is so slight that the general requirement of authentication by extrinsic evidence under the Federal Rules of Evidence is unnecessary in certain cases, such as this.  Doc. 60 at 3; *see also* Fed. R. Evid. 901.  Under Federal Rule of Evidence 902, "Trade inscriptions and the Like"—such as the internal labels and/or stamps on the electronic devices in question—are self-authenticating items.  Fed. R. Evid. 902.  Moreover, these trade inscriptions are not hearsay, because they are not assertions of a declarant.  *See, e.g.*, United States v. Gutierrez, 625 F. App'x 888, 895–96 (10th Cir. 2015); *United States v. Thody*, 978 F.2d 625 (10th Cir. 1992).  Accordingly, the Court will grant the Trade Inscription MIL.

## CONCLUSION

**IT IS THEREFORE ORDERED** that that the Penalties MIL is **GRANTED**, the Plea Negotiations MIL is **GRANTED**, the Prior Statements MIL is **GRANTED IN PART**, and the Trade Inscription MIL is **GRANTED**, consistent with this Memorandum Opinion and Order.

16

ENTERED this 12th day of April 2022.

MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE