UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                       No. 20-CR-01903 MV

JOSE PENA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on three of Mr. Pena's four motions *in limine* in his omnibus motion, including (1) a motion *in limine* to exclude DNA evidence and any expert testimony thereon ["DNA MIL"], (2) a motion *in limine* to strike the phrase "a.k.a. Jaime Peres" or any mention of the alleged alias to designate Mr. Pena in any exhibits or evidence before the jury ["Alias MIL"], and (3) a motion *in limine* to prohibit the use of the term "victim" to describe Jane Doe ["Victim MIL"]. Doc. 69. The government filed a response to Mr. Pena's motions *in limine* [Doc. 75], and Mr. Pena filed a reply [Doc. 79]. Having carefully considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the DNA MIL is **MOOT**, the Alias MIL is **GRANTED IN PART**, the Victim MIL is **GRANTED IN PART**.

### BACKGROUND

Mr. Pena was charged by indictment on October 16, 2020 on eight counts of Production of Visual Depicitions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256. Doc. 1. On June 9, 2021, a Superseding Indictment was filed, charging Mr. Pena with one count of Coercion and Enticement, in violation of 18 U.S.C. § 2422(b), as well as eight counts of Production of Visual Depictions of a Minor Engaging in Sexually

Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256.  Doc. 32.

## DISCUSSION

1. **DNA MIL**

In the DNA MIL, Mr. Pena moves the Court "to exclude DNA evidence and any expert testimony thereon."  Doc. 69 at 1.  He argues that the government has only provided "a brief conclusory report regarding the DNA evidence and the expert's opinions" that does not meet the requirements of Federal Rule of Evidence 702(b)–(d) or Federal Rule of Criminal Procedure 16(F).  *Id.* at 1–2.

At the April 7, 2022 pretrial conference, Mr. Pena withdrew the DNA MIL.  Doc. 96 at 4.  Accordingly, the Court finds the DNA MIL moot.

2. **Alias MIL**

In the Alias MIL, Mr. Pena moves the Court "to strike the phrase 'a.k.a. Jaime Peres' or any mention of the alleged alias to designate Mr. Pena in any exhibits or evidence before the jury."  Doc. 69 at 2.  He argues that "[p]ermitting the Government to simply call Mr. Pena 'Jaime Peres' in either the indictment . . . or any other exhibit or evidence to be received by the jury presupposes guilt and violates 'the presumption of innocence.'"  *Id.* at 2–3.  He also argues that the alleged alias is impermissible vouching, because the use of the alias by the prosecutor may explicitly or implicitly bolster the credibility of any witness that testifies that Mr. Pena is, in fact, Jaime Peres.  *Id.* at 3 (citing *United States v. Harlow*, 444 F.3d 1255, 1262 (10th Cir. 2006) ("Argument or evidence is impermissible vouching . . . if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.")).  Finally, Mr. Pena argues that the phrase "a.k.a. Jaime Peres"

2

introduces inflammatory and prejudicial surplusage into the indictment. *Id.* at 3–5 (citing Fed. R. Cr. P. 7(d)).

The government responds, arguing that Mr. Pena "seeks to prevent the United States from making reference to [Mr. Pena's] alias, 'Jaime Peres,' before the jury. Doc. 75 at 2. In response to this framing of the Alias MIL, the government argues that it must mention the Jaime Peres alias at trial because the alias—and Mr. Pena's alleged assumption of this alias—is essential to proving the Coercion and Enticement charge. *Id.* (citing 18 U.S.C. § 2422). The government also argues that the alias is *res gestae* or intrinsic evidence that is "necessary to complete the story of the charged offense." *Id.* at 2–3.

Mr. Pena replies that he "does not object to the Government presenting evidence towards proving that Mr. Pena posed as 'Jaime Peres,'" but merely objects "to naming Mr. Pena 'Jaime Peres'" in evidence, exhibits, and the indictment. Doc. 79 at 3.

At the April 7, 2022 pretrial conference, Mr. Pena clarified that he objects to the use of the phrase "a.k.a. Jaime Peres" as it appears in court documents, such as the verdict form. Doc. 96. Mr. Pena does not object to the government's presentation of evidence and exhibits that go to establishing that Jaime Peres may, in fact, be Mr. Pena. *Id.*

To the extent that Mr. Pena objects to the phrase "a.k.a. Jaime Peres" when it is used as a foregone conclusion that Mr. Pena *is* Jaime Peres, he is correct that it is improper. As the government explains, proving that Mr. Pena posed as Jaime Peres is essential to proving that Mr. Pena is guilty of the Coercion and Enticement charge. Doc. 75 at 2 ("[B]ut-for Defendant posing as a teenage boy named 'Jaime Peres' on Facebook, Jane Doe would not have engaged in sexual conduct with Defendant."). Were the Court to present the jury with court documents, such as the verdict form, equating Mr. Pena and Jaime Peres, an impermissible implication might arise that

3

the Court had already determined that the two were, in fact, the same person. *See Quercia v. United States*, 289 U.S. 466, 470 (1933) ("The influence of the trial judge on the jury 'is necessarily and properly of great weight' and '[her] lightest word or intimation is received with deference, and may prove controlling.' This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided.'"). Likewise, court documents presumptively equating Mr. Pena and Jaime Peres would not only violate Mr. Pena's presumption of innocence, but would improperly lighten the government's burden of persuasion. *See Mullaney v. Wilbur*, 421 U.S. 684, 702 n.31 (1975) ("[T]he prosecution bears both the production burden and the persuasion burden.").

On the other hand, given the government's burden of production and persuasion, the government must be allowed to present evidence and exhibits that Jaime Peres may, in fact, be Mr. Pena. *See Mullaney*, 421 U.S. at 702 n.31. Thus, to the extent that Mr. Pena seeks to strike "*any* mention of the alleged alias . . . in any exhibits or evidence before the jury," the Alias MIL will not be granted. Doc. 69 at 2 (emphasis added).

Accordingly, the Court grants in part the Alias MIL, striking the phrase "a.k.a. Jaime Peres" from court documents such as the verdict form and ordering the government to omit the phrase in its forthcoming Second Superseding Indictment. The government may present exhibits and evidence at trial that Jaime Peres may, in fact, be Mr. Pena.

3. **Victim MIL**

In the Victim MIL, Mr. Pena moves the Court "to prohibit the use of the term 'victim' to describe Jane Doe." Doc. 69 at 6. He argues that the term is prejudicial because "[t]his is a case where Mr. Pena's innocence is inconsistent with his daughter being a victim." *Id.* Mr. Pena also

4

argues that "the term sacrifices the presumption of innocence," and constitutes "improper prosecutorial vouching" by signaling that the prosecutor believes Jane Doe's version of events. *Id.* at 7. Finally, Mr. Pena argues that "allowing any witness to refer to Jane Doe as a victim is tantamount to a witness presenting testimony on an ultimate issue of fact, which is error." *Id.* (citing *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000)).

The government responds that the Victim MIL "is a matter of judicial discretion, and therefore the United States defers to the Court on its preference as to how it may refer to Jane Doe throughout the evidentiary portion of the trial." Doc. 75 at 5. However, the government "request[s] permission to refer to Jane Doe as a 'victim' during its closing argument." *Id.*

Mr. Pena replies that "[e]ven during closing arguments, and perhaps especially then, calling Jane Doe a victim is improper vouching by the prosecutor and should be disallowed." Doc. 79 at 6.

Regardless of whether use of the term "victim" constitutes "improper prosecutorial vouching," some courts, including this Court, have recognized the potentially prejudicial effect of the term "victim" at trial. *Sena*, 2021 WL 4129247, at *1 (citing *State v. Cortes*, 851 A.2d 1230, 1239–40 (Conn. App. Ct. 2004), *aff'd*, 885 A.2d 153 (Conn. 2005); *Talkington v. State*, 682 S.W.2d 674, 674 (Tex. App. 1984); *People v. Davis*, 423 N.Y.S.2d 229, 230 (N.Y. App. Div. 1979)). Namely, "the term victim is prejudicial when the core issue at trial is whether a crime has been committed—and therefore, whether there is a victim." *Id.*; *see* Fed. R. Evid 403.

Closing argument, however, is different. *See Lambert v. Midwest City Mem'l Hosp. Auth.*, 671 F.2d 372, 375 (10th Cir. 1982) (The Tenth Circuit has "consistently afforded trial counsel considerable leeway" during closing argument.). In its closing, the government is permitted to argue that it has met its burden to establish Mr. Pena's guilt. Consequently, it would not be unfairly

prejudicial to allow the government to follow this argument to its logical conclusion by calling Jane Doe a victim.

Accordingly, the Court will grant in part the Victim MIL, prohibiting the use of the term "victim" at trial, except during closing argument.

## CONCLUSION

**IT IS THEREFORE ORDERED** that that the DNA MIL is **MOOT**, the Alias MIL is **GRANTED IN PART**, the Victim MIL is **GRANTED IN PART**, consistent with this Memorandum Opinion and Order.

ENTERED this 12th day of April 2022.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE