UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                                                              No. 20-CR-01903 MV

JOSE PENA,

    Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Mr. Pena's Opposition to Government's Proposed Experts and Motion for *Daubert* Hearing. Doc. 81. The government filed a reply on April 4, 2022. Doc. 92. The Court granted the request for a *Daubert* hearing and held a *Daubert* hearing on April 7, 2022. Docs. 90, 96, 109. The Court also ordered the government to supplement its Notice of Intent to Offer Expert Testimony [Doc. 67]. Doc. 93. Having carefully considered the briefs, testimony, oral arguments, and relevant law, and being otherwise fully informed, the Court now finds that Mr. Pena's Motion is **DENIED IN PART**.

### BACKGROUND

Mr. Pena was charged by indictment on October 16, 2020 on eight counts of Production of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256. Doc. 1. On June 9, 2021, a Superseding Indictment was filed, charging Mr. Pena with one count of Coercion and Enticement, in violation of 18 U.S.C. § 2422(b), as well as eight counts of Production of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256. Doc. 32. On April 13, 2022, a Second Superseding Indictment was filed charging Mr. Pena with one count of Coercion

and Enticement, in violation of 18 U.S.C. § 2422(b), and two counts of Production of Visual Depictions of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256.  Doc. 103.  He is accused of coercing or enticing his minor daughter into having sexual contact with him and recording that contact.

On March 18, 2022, the government filed its Notice of Intent to Offer Expert Testimony ("Notice").  Doc. 67.  The government sought to offer six expert witnesses including a Forensic Scientist (DNA), a Sexual Assault Nurse Examiner, a Forensic Examiner (Computer Extractions), a Special Agent (IP Addresses), a Language Specialist, and an Independent Contract Interpreter.  *Id.*

On March 30, 2022, Mr. Pena filed the instant Opposition to Government's Proposed Experts and Motion for *Daubert* Hearing.  Doc. 81.  Mr. Pena objects to the following proposed expert witnesses:  Alejandra Casarrubias, Sexual Assault Nurse Examiner; Byron French, Forensic Examiner (Computer Extractions); Jacob Joel vanBrandwijk, Special Agent (IP Addresses).  *Id.* at 1.  He argues that (1) the Notice was untimely, (2) the Notice did not meet the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G) or Federal Rule of Evidence 702, and (3) a *Daubert* hearing is necessary to evaluate the proposed expert witnesses.  *Id.*

On April 1, 2022, the Court found that the government had not fully complied with Rule 16 and ordered the government to provide additional written briefing to fully articulate expert witnesses' specific opinions and the bases for these opinions.  Doc. 93.

On April 4, 2022, the government filed a reply to supplement the Notice, arguing that it was timely and that, with the supplement, it was sufficiently specific.  Doc. 92.

A *Daubert* hearing was held on April 7, 2022.  Docs. 90, 96, 109.

**DISCUSSION**

**1. Timeliness of the Notice**

Mr. Pena argues that the government's Notice is "untimely" and "far too late" under Rule 16 and the standard discovery order. Doc. 81 at 2, 4. The Notice was filed on March 18, 2022—thirty-eight days before the start of trial on April 25, 2022 and 518 days after Mr. Pena was indicted on October 16, 2020. *See* Docs. 1, 67, 77. As such, he argues that the Court should exercise its authority under Rule 16 to exclude the expert witness testimony. Doc. 81 at 4.

The government responds, arguing that its Notice was timely. Doc. 92. The government asserts that "the evidence forming the bases of the experts' testimony and opinions was disclosed on November 2020"—eight days after the Discovery Order was filed. *Id.* at 2; Doc. 17. As to proposed expert witness Alejandra Casarrubias, the government asserts that it disclosed relevant reports on November 5, 2020 and that it disclosed her curriculum vitae on March 18, 2022. *Id.* at 5. As to proposed expert witness Byron French, the government asserts that it disclosed the meta data for the extracted videos on November 5, 2020, that it disclosed sanitized extractions on April 16, 2021, and that it disclosed a statement of his qualifications on March 18, 2022. *Id.* at 6. As to proposed expert witness Jacob Joel vanBrandwijk, the government asserts that it disclosed Internet Protocol ("IP") addresses from the Facebook record returns in November 2020, that it disclosed a statement of his qualifications on March 18, 2022, and that it disclosed a report and spreadsheets related to the IP addresses on March 29, 2022. *Id.* at 2, 8. The government noted that it did not receive the IP addresses report and spreadsheets until March 29, 2022. *Id.* at 2.

Under Rule 16 of the Federal Rules of Criminal Procedure, "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during

3

its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). "If a party fails to comply with a discovery request, the district court may order sanctions, including (1) issuance of an order demanding compliance, (2) grant of a continuance, (3) exclusion of undisclosed evidence, or (4) the imposition of any other just order." *United States v. Brown*, 592 F.3d 1088, 1090 (10th Cir. 2009); *see also* Fed. R. Crim. P. 16(d)(2)(C), (D).

Pursuant to the District's standard discovery order ("Discovery Order"), Mr. Pena is deemed to have requested notice of the Government's intent to present expert testimony. *See* Doc. 17 ¶ 1. This Discovery Order, which was filed on October 28, 2020, requires the Government to provide defense counsel with all Rule 16 materials within eight days of filing. *Id.* ¶ 1. Moreover, the Discovery Order imposes a continuing duty to disclose that requires each party to "promptly notify the other party or that other party's attorney and the court of the existence of additional evidence or material." *Id.* ¶ 4.

The law does not support Mr. Pena's argument that he was prejudiced by the timing of the government's Notice. Courts in the Tenth Circuit have routinely found that defendants are not prejudiced by late disclosures. *See, e.g.*, *United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, 1253–54 (D.N.M. 2012), *aff'd sub nom. United States v. Medina-Copete*, 757 F.3d 1092 (10th Cir. 2014) (finding that "the Defendants have not shown any prejudice in light of the extensive outline the United States gave regarding [an expert's] proposed testimony" at a hearing held twelve days before trial). In fact, there is broad consensus among courts of appeal that defendants are only prejudiced by late disclosures when they are made just one to three days prior to the start of trial. *See, e.g.*, *United States v. Nacchio*, 555 F.3d 1234, 1236 (10th Cir. 2009) (prejudice under Rule 16 where expert notice was first disclosed three days prior to the start of trial); *United States v. Hoffecker*, 530 F.3d 137, 188 (3d Cir. 2008) (prejudice at three days); *United States v. Concessi*,

4

38 F. App'x 866, 868 (4th Cir. 2002) (prejudice at one day); *United States v. Petrie*, 302 F.3d 1280, 1288 (11th Cir. 2002) (prejudice at one day).  Here, on the other hand, Mr. Pena (1) had access to nearly all of the evidence underlying the government's proposed expert witnesses' opinions for more than a year, (2) received the government's Notice more than a month before trial, (3) received a more detailed Notice on April 4, 2022—twenty-one days before trial, and (4) had the opportunity to cross-examine three witnesses at the *Daubert* hearing on April 7, 2022.  *See* Docs. 67, 90, 92.  The fact that the government disclosed certain additional evidence on March 29, 2022—nearly a month before trial—does not prejudice Mr. Pena.  *See, e.g.*, *Nacchio*, 555 F.3d at 1236; *Goxcon-Chagal*, 886 F. Supp. 2d at 1253–54.  Moreover, the fact that the Court held a *Daubert* hearing undercuts Mr. Pena's argument that he was prejudiced by the timing of the government's Notice.  *See United States v. Nacchio*, 519 F.3d 1140, 1151 (10th Cir. 2008), *vacated in part on reh'g en banc*, 555 F.3d 1234 (10th Cir. 2009); Doc. 90.

Additionally, Mr. Pena's argument that the government's Notice did not comply with the Discovery Order is without merit.  The government complied with the Discovery Order's requirement to disclose evidence to Mr. Pena exactly eight days after the Discovery Order was docketed.  *See* Doc. 17 ¶ 1 (Discovery Order docketed October 30, 2020); Doc. 92 at 5 (Evidence disclosed November 5, 2020).  Moreover, the government complied with the Discovery Order's continuing duty to disclose by disclosing additional evidence to Mr. Pena on April 16, 2021; March 18, 2022; and March 29, 2022.  *See* Doc. 17 ¶ 4; Doc. 92 at 2, 5–6, 8.  In addition, the Court does not find any indication that the government has acted in bad faith.

Accordingly, the Court finds that the government's Notice was timely.  The Court will not exclude expert testimony on this basis.

## 2. Specificity of the Notice

Mr. Pena argues that the government's Notice fails to comply with Rule 16's requirement to "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Doc. 81 at 5 (quoting Fed. R. Cr. P. 16(a)(1)(G)). Citing Sixth and Seventh Circuit cases, Mr. Pena argues that a mere "recitation of topics" does not satisfy Rule 16. *Id.* (citing *United States v. White*, 492 F.3d 380, 407 (6th Cir. 2007); *United States v. Duvall*, 272 F.3d 825, 828–29 (7th Cir. 2001)). He contends that the government often "states topics of expertise but not the bases and reasons for opinions."[1] *Id.* at 6. Mr. Pena further contends that this lack of specificity undermines his "ability to meaningfully confront these witnesses" and that he "lack[s] access to these witnesses." *Id.* Thus, he urges the Court to exclude the expert testimony of Ms. Casarrubias, Mr. French, and Mr. vanBrandwijk. *Id.* at 7.

On April 1, 2022, the Court found that the government's Notice did not fully comply with Rule 16 and ordered the government to provide additional written briefing to fully articulate expert witnesses' specific opinions and the bases for these opinions. Doc. 93

The government argues that its Notice, particularly as supplemented by its reply in response to the Court's order, articulates its proposed experts' opinions and the bases and reasons for those opinions with sufficient specificity. Doc. 92 at 3–7. Further, the government provided Mr. Pena with each proposed expert's curriculum vitae, which it argues fulfills Rule 16's requirement to describe the witness's qualifications. *Id.* at 3–7; Fed. R. Cr. P. 16(a)(1)(G).

The written summary of testimony required under Rule 16 "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.* However,

---

[1] It is unclear from this language whether Mr. Pena concedes that the government states its proposed expert witnesses' opinions, in addition to proposed topics of testimony in its Notice.

the notice need only "permit preparation for cross-examination and presentation of opposing experts," but need not provide a "[d]etailed, extensive discussion . . . track[ing] the methodological factors set forth by the *Daubert* Court." *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1231 (D.N.M. 2013) (Herrera, J.) (citing Margaret A. Berger, *Procedural Paradigms for Applying the Daubert Test*, 78 Minn. L. Rev. 1345, 1360 (1994); Fed. R. Crim. P. 1 advisory committee's notes to 1993 amendment). Additionally, the "[p]rovision of the expert's curriculum vitae satisfies the requirement of Rule 16 to include a description of the witness's qualifications." *Id*

For example, in *United States v. Brown*, the government's notice stated that a proposed fingerprint examiner expert "will testify that she compared the defendant's known fingerprints found on fingerprints [sic] cards with a latent fingerprint found" on a job application, and "will testify the latent fingerprint on the job application is the defendant's fingerprint." 592 F.3d 1088, 1089 n.2 (10th Cir. 2009). The Tenth Circuit found that this disclosure substantially complied with Rule 16 because the notice stated the expert's opinion and described the anticipated testimony—that "the fingerprint found at the scene of the crime matched Brown's." *Id.* at 1091. In *McCluskey*, the court found that reports disclosed to the defendant, including statements that a proposed DNA expert will "testify to her opinion that, '[t]o a reasonable degree of scientific certainty, John McCluskey is the source of the major DNA profile' obtained from items 1B22A, 1B22B, 1B22C, and 1B39A'" were sufficient to notify the defendant of the expert's opinions. *McCluskey*, 954 F. Supp. 2d at 1231. Additionally, the court found that the disclosure of approximately "70 pages of methodology, testing analysis, results, notes, and national match detail report" were sufficient to describe "the bases and reasons for those opinions" under Rule 16. *Id.* at 1230–31. In *Goxcon-Chagal*, the government's notice stated that the proposed expert, a DEA special agent, would (1) testify "that the quantity of methamphetamine in question is a distributable

7

amount, as opposed to a personal use amount," (2) "quantify the monetary value of the seized methamphetamine," and (3) "offer testimony regarding general aspects of narcotics investigations." 886 F. Supp. 2d at 1253–54.  While the *Goxcon-Chagal* court acknowledged "that the Notice is not as specific as it could be, the [c]ourt [did] not believe that it [was] so deficient as to require a sanction." *Id.* at 1254.

Here, the government has met its burden under Rule 16 as to Ms. Casarrubias.  In its reply supplementing the Notice, the government outlines numerous specific opinions of Ms. Casarrubias.  Doc. 92 at 3–5.  First, the government states that Ms. Casarrubias will "educate the jury on the nature of a SANE examination, the process of evidence collection, and the documentation of physical findings."  Doc. 92 at 3.  This mirrors the *Goxcon-Chagal*'s expert's opinion as to "general aspects of narcotics investigations."  *Goxcon-Chagal*, 886 F. Supp. 2d at 1254.  Second, Ms. Casarrubias will testify as to "her observations of Jane Doe's body and physical state during the examination."  Doc. 92 at 4.  The government asserts that Ms. Casarrubias will render the following opinions: (1) "Tenderness to Jane Doe's hymen is consistent with Jane Doe's account of sexual assault"; (2) "The observed redness/irritation below Jane Doe's hymen is consistent with Jane Doe's account of sexual assault"; and (3) "While the white dots with reported tenderness/burning on the hymen are not consistent with vaginal penetration, this symptom was likely aggravated by vaginal penetration." *Id.* at 4–5.  These opinions mirror the expert opinion rendered in *McCluskey* that the defendant's DNA was consistent with the DNA obtained from certain items in evidence.  *See McCluskey*, 954 F. Supp. 2d at 1231.  Moreover, in disclosing Ms. Casarrubias' reports and curriculum vitae, the government has met its burden to describe "the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Cr. P. 16(a)(1)(G); *McCluskey*, 954 F. Supp. 2d at 1231.

The government has also met its burden under Rule 16 as to Mr. French. First, in its reply supplementing the Notice, the government states that Mr. French "will testify about the forensic extraction and examination process from a general standpoint." Doc. 92 at 5. As with Ms. Casarrubias, this mirrors the *Goxcon-Chagal*'s expert's opinion as to "general aspects of narcotics investigations." *Goxcon-Chagal*, 886 F. Supp. 2d at 1254. Second, Mr. French "will testify about his review of the device extractions in this particular case." Doc. 92 at 6. Specifically, the government asserts that Mr. French will render the following opinions: "Based on his examination of the available meta data (including the file types, file paths, file titles, and hash values), each video file [of alleged child pornography] is a separate creation." *Id.* As in *Brown*, this disclosure substantially complies with Rule 16 because the notice states the expert's opinion and describes the anticipated testimony—that "each video file is a separate creation." *See id.*; *Brown*, 592 F.3d at 1091. Further, the government states that Mr. French's opinion "is reached, primarily, through analysis of the sequential naming convention of the files [], as well as the creation times in comparison to the file lengths." Doc. 92 at 6. By outlining this basis for Mr. French's opinion, as well as disclosing meta data, sanitized extractions, and Mr. French's curriculum vitae, the government has met its burden to describe "the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Cr. P. 16(a)(1)(G); *McCluskey*, 954 F. Supp. 2d at 1231.

Finally, the government has met its burden under Rule 16 as to Mr. vanBrandwijk through its supplement to the Notice. As with Ms. Casarrubias and Mr. French, Mr. vanBrandwijk's testimony "to educate the jury on IP addresses in general, including how they are assigned and utilized" mirrors the *Goxcon-Chagal*'s expert's opinion as to "general aspects of narcotics investigations." *Goxcon-Chagal*, 886 F. Supp. 2d at 1254; Doc. 92 at 7. Additionally, the government contends that Mr. vanBrandwijk will opine that "the same [device] is behind the

'Jaime Peres' and 'Amor Corazon' Facebook account." Doc. 92 at 7. As Mr. Pena characterizes it, this opinion is, in effect, that "Mr. Pena is Jaime Peres." Doc. 81 at 11. While Mr. vanBrandwijk does not go so far, his opinion makes it more likely that Mr. Pena is Jaime Peres, and such an opinion substantially complies with Rule 16 because it precisely mirrors the expert's opinion in *Brown* that "the fingerprint found at the scene of the crime matched Brown's." *Brown*, 592 F.3d at 1091. Further, the government states that Mr. vanBrandwijk's opinion is based (1) "on his professional experience"; (2) "on the Facebook IP logs, indicating 'Jaime Peres' and 'Amor Corazon' utilized the same IP address on numerous occasions and recorded activity on Facebook within a short period of time,"; and (3) "on the provider's use of IPv6 technology, which is used to uniquely address devices on the Internet." Doc. 92 at 7. By outlining these bases for Mr. vanBrandwijk's opinion, as well as disclosing Facebook records, IP analysis spreadsheets, and Mr. vanBrandwijk's curriculum vitae, the government has met its burden to describe "the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Cr. P. 16(a)(1)(G); *McCluskey*, 954 F. Supp. 2d at 1231.

To the extent that Mr. Pena was prejudiced by the government's Notice, any such prejudice has been alleviated because the Court granted a *Daubert* hearing and ordered the government to supplement its Notice. Docs. 90, 93. Accordingly, the Court finds that the government's Notice—as supplemented by its reply—is sufficiently specific. *See* Docs. 67, 92. The Court will not exclude expert testimony on this basis.

### 3. Admissibility of Expert Testimony

Mr. Pena argues that the government "has provided only a minimal basis for this Court to evaluate the proposed testimony of Alejandra Casarrubias, Byron French, and [Jacob] Joel vanBrandwijk's [sic] under Federal Rules of Evidence 702 and 703 and *Kumho Tire Co.* and

*Daubert*." Doc. 81 at 11. He asks the Court to exercise its gatekeeping function by holding a *Daubert* hearing. *Id.* "Absent further factual submissions by the Government and the holding of an evidentiary hearing," Mr. Pena asks the Court to "deny the Government's motion for admission of the testimony of Alejandra Casarrubias, Byron French, and [Jacob] Joel vanBrandwijk." *Id.* at 12.

The government asks that the Court "allow the [proposed] expert testimony and evidence to be offered in the Government's case-in-chief at trial and that the Court find that the proposed testimony by each witness has a 'reliable basis in the knowledge and experience' in each of their specialized fields and is therefore admissible." Doc. 92 at 8.

Under Rule 702 of the Federal Rules of Evidence, witnesses with the requisite "knowledge, skill, experience, training, or education" may provide expert testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To be admissible under Rule 702, evidence must be both relevant and reliable. *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The trial judge is to maintain a gatekeeping function, only admitting evidence that is both relevant and reliable. *Id.* at 597. The Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael* extended the holding in *Daubert* such that the trial judge's gatekeeping function applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge. 526 U.S. 137, 141 (1999).

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. In the context of Rule 702, the expert must

11

provide testimony based on their specialized knowledge that is "beyond the ken of the average juror." *United States v. Michael*, No. CR 06-1833 MCA, 2007 WL 9657855, at *3 (D.N.M. Nov. 15, 2007) (quoting *United States v. Tapia-Ortiz*, 23 F.3d 738, 740–41 (2d Cir. 1994)). Thus, to be relevant, the expert's testimony must "help the trier of fact to understand evidence or determine a fact in issue." Fed. R. Evid. 702(a).

The Supreme Court in *Daubert* announced four factors for a trial judge to consider in assessing the reliability of evidence under Rule 702: testing, peer review, error rates, and general acceptance. *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co.*, 526 U.S. at 141. The Court emphasized that the inquiry is meant to be a flexible one, focused on principles and methodology rather than the conclusions that are generated. *Daubert,* 509 U.S. at 595–96. The *Kumho Tire* Court reiterated that the test is flexible and held that a trial court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 141–42. The factors enumerated in *Daubert* are not intended to be a "definitive checklist or test," but rather they should guide the trial judge in determining whether expert testimony is reliable. *Id*. at 150–52. The judge has "broad latitude" in making a reliability determination. *Id*. at 153.

Generally speaking, the Rules "encourage the admission of expert testimony." *United States v. Channon*, No. CR 13-966 JCH, 2015 WL 13666980, at *3 (D.N.M. Jan. 8, 2015) (Herrera, J.) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2012)). Thus, the presumption "is that expert testimony is admissible." *Id.* (quoting 4 Weinstein & Berger, *supra,* § 702.02[1]). "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment.)

12

a. **Alejandra Casarrubias**

Ms. Casarrubias has the requisite qualifications to serve as an expert witness on SANE examinations. *See* Fed. R. Evid. 702. She has two associates degrees, as well as a bachelor's degree in nursing. Doc. 109 at 11:13–15. She has worked as a Registered Nurse since 2012 and is currently the clinical manager of Casa de Salud, a health clinic in Albuquerque. *Id.* at 11:23–25. She has worked as a SANE nurse since November 2011 and has performed more than 400 SANE exams to date. *Id.* at 10:21–22, 17:9–12. She completed a 64-hour training to become a SANE nurse, and she now trains new SANE nurses. *Id.* at 13:8, 13:20. This level of experience and training far surpasses the qualifications of other SANE nurses that have been qualified as experts. *See, e.g.*, *United States v. Harry*, 20 F. Supp. 3d 1196, 1239 (D.N.M. 2014) (Browning, J.) (qualifying a SANE nurse as an expert because she (1) was "a clinical registered nurse," (2) had "three years of experience providing care in the hospital setting," (3) had been a SANE nurse for several years, (4) had "completed the SANE Competency Examination," and (5) had "an associate's degree in nursing").

Ms. Casarrubias' proposed testimony is relevant. Fed. R. Evid. 401. Ms. Casarrubias will testify as to the characteristics of sexual assault victims generally and her observations of Jane Doe's body and physical state, as well as opining that Jane Doe's symptoms are "consistent with Jane Doe's account of sexual assault" or were "likely aggravated by vaginal penetration." Doc. 92 at 3–5. This parallels the facts of *United States v. Charley*, where the Tenth Circuit found that "the court did not abuse its discretion by allowing [a doctor] to 'summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse,' and allowing him to 'inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits.'" 189 F.3d 1251, 1264 (10th Cir.

13

1999); *see also Harry*, 20 F. Supp. 3d at 1240 (finding that the SANE nurse's "testimony that Doe's injuries are consistent with her version of events is relevant to an issue in this case, as [her] testimony corroborates Doe's version of events.").

Finally, Ms. Casarrubias' proposed testimony is reliable. She performed a SANE exam, which is a generally accepted procedure in the field. *See Harry*, 20 F. Supp. 3d at 1239 (finding testimony reliable because a SANE nurse's "training is generally accepted in the medical community, as SANE nurses are commonly found at hospitals, and their examination is often used in sexual assault trials"); *see also Daubert*, 509 U.S. at 594–95 (listing as a reliability factor the general acceptance of a witness' method). Moreover, at the *Daubert* hearing, she testified that she followed the standard SANE exam procedure in the instant case. Doc. 109 at 17:23–25—18:1–3; *Charley*, 189 F.3d at 1263 (finding testimony reliable because the doctor "testified about the form he fills out and the list of things he covers in suspected abuse cases, and how he followed that form in this case"). Finally, Ms. Casarrubias has more than a decade of experience working as a Registered Nurse and as a SANE nurse trainer. *See Harry*, 20 F. Supp. 3d at 1239 (finding testimony reliable because "training as a registered nurse likely includes training in certain standards of medical treatment").

Accordingly, the Court finds that Ms. Casarrubias' proposed testimony is admissible in the government's case-in-chief.

### b. Byron French

Mr. French has the requisite qualifications to serve as an expert witness in the area of computer forensics and computer forensic data acquisition and analysis. *See* Fed. R. Evid. 702. He has worked as a Computer Forensic Examiner for eight years. *See* Byron French Curriculum Vitae. He has five Computer Analysis and Response Team (CART) certifications, as well as a

CompTIA A+ Certification, an Access Data – ACE Certification, and a GIAC-GCFE VIA SANS408 certification. *Id.* He has participated in an extensive list of forensics trainings. *Id.* Finally, he has analyzed over 107 Terabytes of data of computer media, DVRs, and cellphones in support of over 141 cases since 2014. *Id.* This is more than sufficient to demonstrate that he has the requisite qualifications to serve as an expert witness. *See United States v. Channon*, No. CR 13-966 JCH, 2015 WL 13666980, at *8 (D.N.M. Jan. 8, 2015) (Herrera, J.) (certifying an FBI agent as a forensic computer expert because he (1) had "almost seventeen years of experience with the FBI as a CART field examiner," (2) had certifications in "Network+ Certification, Certified Forensic Computer Examiner, A+ Certification, and DOS/Windows Seizure Certification," (3) had conducted "examinations in 717 cases involving 4,096 pieces of evidence and 175TB of data," and (4) had participated in "a long list of FBI computer courses.").

Mr. French's proposed testimony is relevant. Fed. R. Evid. 401. Mr. French will testify "about the forensic extraction and examination process from a general standpoint." Doc. 92 at 5. As the government contends, "[t]he use of Cellebrite extraction tools is not generally within the purview of average jurors—while most jurors likely know that electronic devices can contain media files, the process of removing the media files for review and analysis is likely foreign to the average juror." *Id.* at 5–6. This goes to the heart of the relevancy inquiry. *See Michael*, 2007 WL 9657855, at *3 (experts must provide testimony that is "beyond the ken of the average juror"). Moreover, in opining that the video files found on the LG Stylo cellular phone and the Apple iPod Touch are separate files "as opposed to a longer, single video file that was broken into separate files," Mr. French's proposed testimony is directly relevant to the basis of the charges against Mr. Pena. Doc. 92 at 6; Doc. 103 at 2.

The Court also finds that Mr. French's proposed testimony is reliable. In the instant motion, Mr. Pena argues that there is insufficient information in the original Notice to explain how Mr. French's "examination of hash values leads him to opine that [the videos of child pornography] were created separately as opposed to being a single video file." Doc. 81 at 10. At the *Daubert* hearing, defense counsel argued that "it's our position that Officer French said at the very end that he could not say whether or not there was a single, sort of, original file from which all the others were derivative." Doc. 109 at 189:15–18. In response, the government argued that the issue of whether the videos "could be one large file that has been broken into three files" was ultimately an issue of weight for the jury to consider. *Id.* at 192:5–17.

At the *Daubert* hearing, Mr. French repeatedly testified that he did not believe the videos at issue were subparts of a larger file. *See, e.g.*, Doc. 109 at 102:12 ("I don't believe so based off of the MD5 hash."). Upon cross examination, Mr. French conceded that "So as far as [Government's] Exhibit 10, the media upload files, those could have been [subparts of a longer file]. The IMG_1294, 5, and 6, those are unique files. They are not part of some bigger file. That's a -- those are actually unique files." *Id.* at 104:18–21. He based this opinion off "[t]he create time, the naming convention, as well as the MD5 hash." *Id.* at 104:23–24. When asked again whether there could have been "an Apple file that contained all of the videos on both [Government's] Exhibits] 9 and 10," Mr. French conceded "It could have been." *Id.* at 105:17–19. When asked yet again "whether or not [the video files were] broken into three smaller clips from a larger movie," Mr. French replied, "It doesn't seem likely." *Id.* at 108:18–21. On redirect, he testified that he saw no indication from the video's meta data that the existing videos had been subdivided from a larger video. *Id.* at 113:5–10.

16

In sum, while Mr. French cannot opine with absolute certainty that the videos at issue were not subparts of a larger single video file, he should not be barred from opining that it is *his* expert opinion that "each video file is a separate creation." Doc. 92 at 6. The law does not require experts to testify with absolute certainty. *See, e.g.*, *McCluskey*, 954 F. Supp. 2d at 1231 (allowing a proposed DNA expert to "testify to her opinion that, '[t]*o a reasonable degree of scientific certainty*, John McCluskey is the source of the major DNA profile' obtained from items 1B22A, 1B22B, 1B22C, and 1B39A'") (emphasis added). Indeed, "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.* at 1240. Thus, the Court finds that challenges regarding the creation of the videos go "to the weight of the [forensic] evidence, not its admissibility, and are matters which [Mr. Pena] can address at trial through cross-examination or presentation of contrary evidence." *Id.* at 1260.

Finally, the Court notes one constraint to Mr. French's proposed testimony. The government's reply to the instant motion states that Mr. French will opine on the "user attribution evidence (to include, accounts located on the photo, forensic artifacts, and browsing history)." Doc. 92 at 6. However, Mr. Pena argued, and the government conceded, that Mr. French did not testify in the *Daubert* hearing that he could opine on any user attribution evidence. Doc. 109 at 189:1–9. Thus, the Court will not allow Mr. French to testify as to user attribution evidence. *Id.* at 189:10–11.

Accordingly, subject to the constraints discussed *supra*, the Court finds that Mr. French's proposed testimony is admissible in the government's case-in-chief.

### c. Jacob Joel vanBrandwijk

Mr. vanBrandwijk has the requisite qualifications to serve as an expert witness in the

17

attribution of internet identities. *See* Fed. R. Evid. 702. He has bachelor's degrees in computer science and mathematics, as well as a master's degree in information assurance. *See* Jacob Joel vanBrandwijk Curriculum Vitae. He has worked in cybersecurity since 2004 and has worked as an FBI Special Agent investigating cyber crimes since 2017. *Id.*; Doc. 109 at 118:23–25—119:1–24. He has multiple cybersecurity certifications. Doc. 109 at 123:10–12, 124:3–7. His testimony at the *Daubert* hearing also demonstrated a deep knowledge of the practice of the attribution of internet identities. *See generally id.* This is more than sufficient to demonstrate that he has the requisite qualifications to serve as an expert witness. *See Channon*, 2015 WL 13666980, at *8.

Mr. vanBrandwijk's proposed testimony is relevant. Fed. R. Evid. 401. First, his testimony on "the use of IP addresses as an investigative tool" is "beyond the ken of the average juror". Doc. 92 at 7; *Michael*, 2007 WL 9657855, at *3. Additionally, his opinion that "the same [device] is behind the 'Jaime Peres' and 'Amor Corazon' Facebook accounts" is highly relevant to and probative of Mr. Pena's possible guilt. Doc. 92 at 7. Finally, to the extent that Mr. Pena contends that the "'reliable principles and methods' [to attribute internet identities] are not widely known," this only serves to underscore the importance and relevance of expert testimony in such a specialized field of knowledge. Doc. 81 at 10–11; *See Michael*, 2007 WL 9657855, at *3.

Mr. vanBrandwijk's proposed testimony is also reliable. Defense counsel argued at the *Daubert* hearing that Mr. vanBrandwijk had "an insufficient amount of data to draw the conclusion that [the] Jaime Peres and Amor Corazon [accounts] were from the same device." Doc. 109 at 201:1–3. Defense counsel noted that Mr. vanBrandwijk only reviewed data from three Facebook profiles to reach his expert opinion and highlighted that "there are potentially many more profiles that would be linked to the same device that were just never requested." *Id.* at 201:6–8. Thus, defense counsel argued that the failure to examine data from more profiles "would start to bring

to the front the question of what exactly the IP address and the IP attribution information is really telling us." *Id.* at 201:10–12.  Government counsel argued that such comments "are fair points of inquiry for cross-examination," but "go more to weight as opposed to the admissibility of the special agent's proposed expert testimony."  *Id.* at 202:5–8.  The Court agrees with the government's position.  While defense counsel is correct that Mr. vanBrandwijk cannot opine on whether other profiles were also linked to the device in question, it does not follow that Mr. vanBrandwijk cannot form expert opinions on the data he *has* analyzed.

Mr. vanBrandwijk testified that he used Facebook business records to identify instances where the IP addresses used by three Facebook accounts overlapped.  *Id.* at 131:5–7, 131:16–17.  He correlated this data using Excel, used the American Registry of Internet Number to determine that multiple devices were not associated with the same IP address, and then identified 53 separate instances of overlap between the IP addresses accessed by the Jaime Peres account and Amor Corazon account.  *Id.* at 131:20–25—132:1–6, 132:24–25—133:1–24, 134:8–12.  After determining that there was no indication that the IP addresses had been hijacked by another user, Mr. vanBrandwijk concluded that the repeated pattern of IP address overlap for more than a year led him to opine that "the same device is being used to access both of those accounts."  *Id.* at 141:14–23, 144:22–25—145:1–6.  The Court finds that this testimony is based on "sufficient facts or data" and is the product of "reliable principles and methods."  Fed. R. Evid. 702(b)–(c); *see also United States v. Wyss*, 542 F. App'x 401, 406–07 (5th Cir. 2013) (finding expert testimony on the attribution of IP addresses reliable based on similar methods); *Havana Docks Corp. v. Carnival Corp.*, No. 19-CV-21724, 2021 WL 6140934, at *3–4 (S.D. Fla. Dec. 10, 2021) (same).

Finally, the Court notes one constraint to Mr. vanBrandwijk's proposed testimony.  The government's reply to the instant motion states that Mr. vanBrandwijk will opine that "the same

*user* is behind the 'Jaime Peres' and 'Amor Corazon' Facebook accounts." Doc. 92 at 7 (emphasis added). Defense counsel argues, and the government concedes, that Mr. vanBrandwijk testified at the *Daubert* hearing that he could only opine that the same *device*, but not the same *user*, was behind the Jaime Peres and Amor Corazon accounts. Doc. 109 at 200:6–18. The Court will limit Mr. vanBrandwijk's proposed testimony accordingly; he may opine that the same device, but not the same user, was behind both accounts.

Thus, subject to the constraints discussed *supra*, the Court finds that Mr. vanBrandwijk's proposed testimony is admissible in the government's case-in-chief.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Mr. Pena's Opposition to Government's Proposed Experts and Motion for *Daubert* Hearing [Doc. 81] is **DENIED IN PART**, consistent with this Memorandum Opinion and Order.

ENTERED this 20th day of April 2022.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE